Senator Harber HALL, Representative Mary Lou Kent, Representative Mary Lou Sumner, Representative Everett Steele, Representative Clarence Neff, and Representative A. C. Bartulis, Plaintiffs,

v.

Mark SIEGEL and National Commission on the Observance of International Women's Year, 1975, a United States Agency, Defendants.

No. 77–1028.

United States District Court, S. D. Illinois, N. D.

June 8, 1977.

J. F. Schlafly, Jr., Alton, Ill., for plaintiffs.

Terry G. Harn, Asst. U. S. Atty., Peoria, Ill., John H. Germeraad, Asst. U. S. Atty., Springfield, Ill., Catherine A. Ribnick, Civil Division, U. S. Department of Justice, Washington, D. C., for defendants.

## DECISION AND ORDER ON MOTIONS FOR TEMPORARY INJUNCTION AND TO DISMISS THE ACTION

ROBERT D. MORGAN, Chief Judge.

Plaintiffs, alleging themselves to be members of the Illinois General Assembly,[1] sue to enjoin "lobbying activities" by the defendants for ratification by state legislatures of the so-called Equal Rights Amendment (ERA) to the United States Constitution, which has been proposed by the Congress of the United States and thereby made available to the States for ratification under the provisions of Article V of the Constitution.

Defendant Siegel is alleged to be an employee of the Executive Branch of the United States Government, "appointed by the President of the United States to lobby from the White House" for passage of said amendment. This is alleged to violate said Article V because federal funds are used for such lobbying, through the federal salaries of such employees, the telephones, and other facilities.

Defendant Commission is alleged to be using federal funds to advance its primary goal, stated by formal resolution as follows:

"As our main commitment to the observance of the International Women's Year, we pledge to do all in our capacity to see that the Equal Rights Amendment is ratified at the earliest possible moment."

---

1. An additional plaintiff, Mulqueeny, was not a legislator, and her complaint was dismissed at the hearing herein for lack of standing to sue.

*See Mulqueeny v. National Commission,* 549 F.2d 1115, Seventh Circuit, 1977.

Such action is said to violate Article V of the Constitution and also specific provisions of Public Law 94–167 and Public Law 94–303, which proscribe expenditure by the Commission for "lobbying activities."

Specifically, Count I of the Complaint asks an injunction restraining the defendants from engaging in lobbying activities for ratification of the Equal Rights Amendment by any state legislature, or to oppose the rescinding of any previous action to ratify same, or from using state or national meetings or conferences of the defendant Commission to urge others to lobby for ratification of said amendment.

Count II seeks repayment by the Commission of some $266,234, alleged to have been illegally received by it from six other federal agencies, and for a payment to plaintiffs of an appropriate finder's fee on that account.

Count III asserts that state meetings for women set up by the defendant Commission are subject to the Federal Advisory Committee Act (Public Law 92–463), which provides that membership of Advisory Committees should be fairly balanced in terms of the points of view represented, but that defendant Commission set up an ERA committee which worked unanimously for ratification of ERA, and in Illinois a coordinating committee, which is not fairly balanced on the issue of ratification of ERA, being 58 in favor and one opposed. Plaintiffs ask an injunction requiring fair balancing of points of view on this "priority" issue, and return to the United States Treasury of all funds spent in violation of the Federal Advisory Committee Act.

Defendant move to dismiss the action, contending:

(1) Plaintiffs lack standing to sue;

(2) Defendant Commission has not engaged in "lobbying";

(3) Defendant Commission has not violated the Federal Advisory Committee Act;

(4) Defendant Siegel does not violate Article V;

(5) Plaintiffs may not attack inter-agency funding;

(6) Plaintiffs have not satisfied the requirements for injunctive relief.

A combined hearing was held on plaintiffs' motion for a preliminary injunction and on defendants' motion to dismiss, and evidence was taken. All defendants are represented by the United States Attorney as well as other federal government attorneys.

An attack on alleged "lobbying" and other violations by the defendant Commission was previously filed in this court (Case No. A–CIV–76–39) by officers of the Illinois Branch of "Stop ERA," an organization actively opposing ratification of the Equal Rights Amendment. On appeal from an injunction issued here, the United States Court of Appeals for the Seventh Circuit held "that plaintiffs lack standing to sue for the relief requested," and therefore that court did not consider the issues relative to the merits of plaintiffs' claim (*Mulqueeny v. National Commission,* 549 F.2d 1115, 7th Cir., 1977). The Court of Appeals found no demonstration of "injury in fact" to the then plaintiffs, and that the relief requested would not ameliorate the harm complained of, because state legislatures might refuse to ratify ERA despite the activities of defendant Commission; and, on the other hand, it might be ratified, even if an injunction against the complained-of action by the Commission were granted by the court. *See Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

On the authority of *United States v. Rumely,* 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953), and *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Court of Appeals also permitted "lobbying activities" to be considered to include only "representations made directly to Congress or to any state legislature, their members or its committees." (*Mulqueeny, supra,* Order of September 9, 1976), as distinguished from ordinary public discourse, radio and television broadcasts, etc. Conse-

quently, the threshold question here must be whether the present plaintiffs have shown the requisite standing to bring any part of this suit.

■ The present plaintiffs allege that as members of the Illinois General Assembly, they are "in the class of persons designed to be protected by the prohibitions against lobbying activities in Public Law 94–167 and Public Law 94–303," and they allege that they "have sustained injury in fact and a threat of injury in fact from the illegal lobbying activities of Defendants." They also assert that visits and telephone calls to legislators by defendants here will absorb substantial time and energy which they should be devoting to the interests of their own constituents.

It is the considered judgment of this court that these allegations state a case of "injury in fact." *See United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Ass'n. of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Cotovsky-Kaplan, Ltd. v. United States,* 507 F.2d 1363 (7th Cir. 1975). Thus far there is no proof here of such injury actually involving plaintiffs, but they state the reasonable belief that it is clearly threatened because of actions and admissions thereof by defendants with respect to legislators in other states.

There must also be indication that grant of the requested relief would ameliorate the problem. Enforcement of an injunction against direct lobbying among them would quite clearly free plaintiffs from the loss of time and energy they now anticipate, so it does seem apparent that they do have standing to bring this suit.

The cases cited by defendants on this point of standing to sue are inapposite. With respect to the statutory obligation of defendant Commission not to spend public money for lobbying activities, there is no First Amendment "freedom of speech" problem whatsoever for any citizen. The merits of plaintiffs' individual contentions must therefore be addressed. That will be done in inverse order of complexity, in the view of this court.

*Defendant Siegel and "The White House"*

■ There appears nothing in the language of Article V of the Constitution of the United States which indicates that the President of the United States should not express his views to state legislators or "lobby" for or against ratification of any amendment which has been proposed; and plaintiffs have cited no authority whatsoever that he may not use members of his official staff for that purpose, even with the obviously attendant incidental public expense. It may offend a sense of fairness, especially of persons whose views on a particular proposed amendment differ from those of the President, to have employees of "The White House," to whose salaries they personally contribute in federal taxes, arrayed against them in lobbying activities; but this is a matter properly in the hands of Congress through appropriations, and in the hands of the people through the election process. The judicial branch should not assume detailed supervision of the President's handling of his staff or of the incidental cost thereof. The court should not presume to decide that expression of the President's views, or exercise of his executive leadership on public issues, must be entirely at his personal expense. Accordingly, the motion to dismiss on behalf of defendant Siegel must be allowed.

*The Transferred Funds and Finder's Fee*

■ It is alleged and not disputed that for fiscal 1975 and 1976 defendant Commission received $266,234 of federal funds by direct contribution (and by assignment of an employee) from other federal agencies, which transfer of funds the Comptroller General of the United States advised a member of Congress on January 13, 1977, was "without proper legal authority" or "was improper," i. e., violative of 31 U.S.C. § 628, which requires expenditure of funds only for the, purposes for which they are appropriated. Plaintiffs want these funds paid back, and claim a "finder's fee." The

contributing agencies are reported to deny impropriety, but reportedly have been unable to clearly justify their action to the Comptroller General. Whether it is a matter of lack of standing to make this claim (as defendants assert) or not, this likewise is not a dispute which is triable here. It can be rectified, if determined to be improper, by the Congress; and if a "finder's fee" should be payable, for which no legal authority whatsoever is cited, it would seem that Representative Teague or the Comptroller General would have a claim thereon which is superior to that of the plaintiffs. The motion to dismiss must be allowed as to Count II.

### The Federal Advisory Committee Act

This statute, Public Law 92–463 (86 Stat. 770), was approved October 6, 1972, and became effective by its terms ninety days following enactment. It stated a finding that such "committees, boards, commissions, councils, and similar groups  *  *  *  in the Executive Branch  *  *  *  are frequently a useful and beneficial means of furnishing expert advice, ideas, and diverse opinions to the Federal Government." It also determined and declared, in substance, that they should be held to the minimum number necessary and should operate openly in accordance with law.

This law stated under "Definitions," in pertinent part:

"Sec. 3. For the purposes of this Act—

* * * * * *

(2) The term 'advisory committee' means any committee, board, commission, *  *  *, or other similar group, or any subcommittee or other subgroup thereof *  *  *  which is—

(A) established by statute  *  *  *, or

(B) established or utilized by the President,

* * * * * *

in the interest of obtaining advise (sic) or recommendations for the President or one or more agencies or officers of the Federal Government, except  *  *  *." (Exceptions inapplicable here.)

The defendant Commission was established by Executive Order # 11832 of President Gerald R. Ford on January 9, 1975, to conclude its work, make a report, and be terminated by January 30, 1976. That period was extended to July 30, 1976, by Presidential amendment dated November 25, 1975. However, by Public Law 94–167 (89 Stat. 1003), approved December 23, 1975, the Commission was "continued" and given responsibility to organize and convene a national conference, to be known as the National Women's Conference. State or regional meetings to be held in advance are to select representatives to the National Conference "in accordance with regulations promulgated by the Commission." Under this statute the Commission is now to terminate no later than March 31, 1978.

There can be little doubt that the Commission, and every group organized thereby or thereunder, is an "advisory committee" by definition, under the Federal Advisory Committee Act (86 Stat. 770).

Section 5 of that Act established "Responsibilities of Congressional Committees," which include seeing that any legislation authorizing the establishment of any advisory committee shall "require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." This is the only reference to such balancing in the Act.

Section 6 of the Federal Advisory Committee Act, *supra,* establishes "Responsibilities of the President" and sets forth no such admonition on balancing of points of view. As noted above, the defendant Commission was established by the President and continued by the Congress. Neither made any mention of, or indicated an attempt at, such balancing. The members of the Commission, which quite obviously was not balanced in terms of opposing points of

view on the desirability of ERA,[2] were appointed by the President from among citizens in private life (with 2 Senators and 2 Representatives being designated by their respective bodies) in accordance with the Executive Order # 11832.

The issue then becomes, since Congress did not perform the responsibility of requiring a balancing of points of view, previously assigned to its committees when it continued this advisory committee, should the court undertake to impose such a requirement on the Illinois Coordinating Committee, also an advisory committee under the definition above? There is little doubt that the Congress has the legislative power to ignore constraints that it alone has created. The court is cited to no authority to the contrary. While in the Federal Advisory Committee Act (86 Stat. 770), Congress appears to have directed its committees to carry out a policy of balancing advisory committees "in terms of the points of view represented," and while defendant Commission and its progeny are advisory committees by the definition in that Act, there simply is no such requirement of balancing in Public Law 94–167 (89 Stat. 1003). Under which defendant Commission now functions.

Section 3(a) of that Act, however, says: "The Conference shall be composed of—

(1) representatives of local, State, regional, and national institutions, agencies, organizations, unions, associations, publications, and other groups which work to advance the rights of women; and

(2) members of the general public, with special emphasis on the representation of low-income women, members of diverse racial, ethnic, and religious groups, and women of all ages."

While under Section 6 the state or regional meetings are constrained to select representatives to the National Conference "consistent with the criteria set forth in Section 3(a) of this Act," *supra,* there do not appear to be any statutory criteria for selection of State Coordinating Committees.

With this background, it cannot be argued, reasonably, that the Commission has not done a responsible job of setting up the Illinois State Coordinating Committee, even though it may be true that of 59 members, only one is in outspoken opposition to ratification of ERA.[3] The Commission sought nominations from many diverse organizations and individuals, and asserts that in the selection process: "There was also a conscious attempt to designate people with a range of views on some of the more controversial issues." (*Selection Process of State Coordinating Committee.* Government Ex. 1, 4/28/77.) In view of the declared unanimous goal of the defendant Commission on ratification of ERA, it is perhaps not surprising that "Stop ERA" was not one of the organizations solicited for nominations; but Congressional change of mind on the importance of balancing, or Congressional oversight on the point, cannot establish legally required balancing of points of view on this one very controversial issue. The statute, whether intentionally or unintentionally on the part of the Congress, does not, by its terms or otherwise, require balancing of points of view on this specific issue, among many of interest to women, in the Illinois Coordinating Committee, the Illinois State Meeting, or in the Illinois delegation to the Conference. Since there is no constitutional or other federal right of plaintiffs to insist upon such balancing, the motion to dismiss must be allowed as to Count III.[4]

---

**2.** The members of the Commission quite clearly represent many points of view in many fields and on many issues, but at its first meeting in April 1975, it unanimously adopted a resolution pledging "to do all in our capacity to see that the Equal Rights Amendment is ratified at the earliest possible moment."

**3.** This is the plaintiffs' contention. The most definitive evidence before the court is from the chairperson of the Illinois Coordinating Committee. She testified that of 52 members serving, 2 are opposed to ERA, 8 or 9 are in declared support of its ratification, and the others have not made any firm position known to her.

**4.** It should be noted that the defendant Commission, as stated by its staff coordinator of policies and plans, operates on the assumption that the state meetings and national conference are subject to the Advisory Committee Act in this context. (Hearing Transcript p. 109.)

*Lobbying in Illinois Legislature*

No plaintiff testified at the hearing and there is no evidence of any "lobbying" of them, or of any other Illinois legislator, on the ERA of recent date. The evidence also shows that the Commission is conscious of the proscriptions against lobbying in its appropriation statutes (Public Laws 94-167 and 94-303). There is no indication in this record of imminent danger of direct lobbying activities by Commission members or staff personnel in the Illinois or other state legislatures.

Plaintiffs are also concerned (and no doubt reasonably so, in view of the Commission's still announced "main commitment") that the Commission is using, and will continue to use, its state and regional meetings as schools for lobbying, i. e., lobbying in favor of ratification of ERA, so that the result of such meetings can be the recruitment of an army of agents to do for the Commission indirectly, precisely what it is prohibited from doing directly. The chairperson of the Illinois Coordinating Committee and the Coordinator of Policies and Plans of the National Commission assert that instruction for lobbying by others is for lobbying on any side of any issue, and it would seem apparent that a person with any capacity to learn lobbying techniques could understand that they could be used to influence legislators for either side of an issue under consideration. This may be an oversimplified understatement of the problem envisioned by plaintiffs here; but this evidentiary record here does not justify a preliminary injunction against generalized instruction in lobbying methods or techniques at the Illinois Meeting, or any other now in prospect.

On the other hand, because these plaintiffs do have standing to sue the Commission in Count I, the motion to dismiss it as to the Commission should be denied and the Commission should be held to answer the allegations of Count I relating to it.

Accordingly, IT IS ORDERED that this action is DISMISSED as to defendant Mark Siegel.

IT IS FURTHER ORDERED that Counts II and III of the Complaint are DISMISSED.

IT IS FURTHER ORDERED that motion of the defendant Commission is DENIED as to Count I and said Commission shall file its ANSWER to the allegations thereof within twenty (20) days.